**STATE of Missouri, Plaintiff–Respondent,**

v.

**James M. NICHOLS, Defendant–Appellant.**

**No. 27047.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 4, 2006.

---

1. All statutory references are to RSMo.2000, unless otherwise indicated.

Amy M. Bartholow, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

James M. Nichols ("Defendant") was convicted by a jury of committing first degree statutory sodomy, a violation of Section 566.062.[1] He was sentenced to a term of thirty years in the department of corrections to run consecutive to a sentence he was already serving on a separate conviction. Defendant appeals his conviction, contending that the trial court erred in: (1) denying his motion to dismiss, because he was not tried within the statutory period set by the Uniform Mandatory Disposition of Detainers Law ("UMDDL"); (2) failing to ascertain on the record whether Defendant's waiver of counsel was knowingly and intelligently entered; and (3) permitting evidence of Defendant's prior misconduct. We reverse and remand.

Defendant does not challenge the sufficiency of the evidence supporting his conviction. Viewing the evidence in the light most favorable to the verdict the record reveals the following.

In October of 1996, thirteen-year-old K.H. ("Victim") was staying at the family's lake house in Camden County, Missouri, with her stepfather, Defendant. Victim's mother and sisters, who had remained at their home in Franklin County, Missouri, were planning on joining them the next day. The morning after their arrival, as Victim was getting out of the shower, she discovered Defendant waiting for her and holding her towel. Defendant dried Victim off with the towel and then led her to his bed. Using lotion as a lubricant, Defendant proceeded to fondle Victim's breasts and "forcefully" rub her vagina, at one point, inserting his finger into Victim's vagina. After a while, Defendant stopped and told Victim to get dressed. Victim left and went to her friend's house, where she waited until her mother arrived that evening.

In August of 2000, after Victim's mother had divorced Defendant, Victim and her older sister, E.H., reported Defendant's sexual abuse to the Franklin County authorities. Detective David R. Scott ("Detective Scott") of the Franklin County

---

1. All references to statutes are to RSMo (2000) and all references to rules are to Missouri Rules of Criminal Procedure (2004), unless otherwise indicated.

Sheriff's Department, investigated the allegations. In September of 2000, Detective Scott visited Defendant in O'Fallon, Missouri, where he was residing at the time. Defendant agreed to speak to Detective Scott about the investigation. On the way to the Sheriff's Department, after Detective Scott advised Defendant of his *Miranda*[2] rights, Defendant spontaneously provided an account of incidents that had occurred between him and his stepdaughters, which corroborated the allegations of sexual abuse that had been made. After arriving at the Sheriff's Department, Defendant continued to talk about what had occurred, before signing a written waiver of his *Miranda* rights. Defendant then provided Detective Scott with a written statement.

On February 18, 2003, while Defendant was serving time in the department of corrections on a separate conviction, he was charged by information with first degree statutory sodomy. A jury trial on October 27, 2004, with Defendant appearing pro se, resulted in a verdict of guilty. The trial court sentenced Defendant as indicated earlier. This appeal followed.

■ In his first point on appeal, Defendant argues that the trial court erred in overruling his motion to dismiss because he was not tried within the statutory period set by the UMDDL. We disagree.

■ "[T]he right to be brought to trial within 180 days after a proper request under [the UMDDL] is jurisdictional." *Carson v. State*, 997 S.W.2d 92, 98 (Mo. App. S.D.1999). "[T]he provisions of the UMDDL are not drenched in doubt or ambiguity, and 'a loss of subject matter jurisdiction inexorably occurs by operation of law when an imprisoned person who has initiated a proper request is not brought to trial within the appropriately determined statutory time period.' " *Id.* (quoting *Russell v. State*, 597 S.W.2d 694, 697 (Mo.App. W.D.1980)). "Jurisdictional issues present questions of law, which we review *de novo* and without deference to the [trial] court's determination." *State ex rel. Garrett v. Dally*, 188 S.W.3d 111, 113 (Mo.App. S.D.2006)(quoting *State ex rel. Nixon v. Moore*, 159 S.W.3d 488, 490 (Mo.App. W.D. 2005)).

■ "The [UMDDL] provides for the prompt disposition of detainers based on untried state charges pending against a prisoner held within this state's correctional system." *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 354 (Mo. banc 1982).[3] Section 217.450.1 of the UMDDL provides that:

> Any person confined in a department correctional facility may request a final disposition of any untried indictment, information or complaint pending in this state on the basis of which a detainer has been lodged against him while so imprisoned. The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

A defendant who complies with Section 217.450.1 must be brought to trial "[w]ithin one hundred eighty days after the receipt of the request and certificate ... by the court and the prosecuting attorney," or the

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985).

untried indictment, information or complaint must be dismissed. Section 217.460. However, the UMDDL defines three instances in which the 180–day period may be tolled: (1) the trial court may grant "additional necessary or reasonable time ... for good cause shown in open court, the offender or his counsel being present[;]" (2) "[t]he parties may stipulate for a continuance[;]" and (3) "a continuance may be granted if notice is given to the attorney of record with an opportunity for him to be heard." Section 217.460. Additionally, Missouri courts have held that any delays attributable to the affirmative actions of a defendant will toll the 180–day period. *State v. Laramore*, 965 S.W.2d 847, 850 (Mo.App. E.D.1998). The State has the burden of showing that the 180–day period should be extended. *Id.*

The following timeline is set out to assist in determining whether Defendant was timely tried.

10/03/02 A Complaint was filed, alleging that Defendant committed the felony of statutory sodomy in the first degree.

11/12/02 The Camden County Sheriff's Department places a detainer against Defendant.

11/21/02 Defendant files an Inmate's Request for Disposition of Indictments, Informations or Complaints ("Request").

12/09/02 Defendant's Request is received by the prosecutor.

12/12/02 Defendant's Request is received by the trial court, triggering the 180–day period in which Defendant must be tried.

02/18/03 Information filed.

03/12/03 The trial is scheduled to begin on May 19, 2003.

04/28/03 The State files a motion for continuance, alleging good cause under the UMDDL, due to the unavailability of an essential witness, Detective Scott, who was placed on active military duty on March 14, 2003.

05/21/03 The trial court holds a hearing, and finds good cause to grant the State's motion for continuance over the objection of Defendant, due to the unavailability of State's witness, Detective Scott, who had been ordered to active military duty.

05/29/03 The trial is scheduled to begin October 20, 2003.

10/06/03 The State files its second motion for continuance, alleging the continued unavailability of Detective Scott.

10/20/03 A hearing is held on the State's second motion for continuance, with Defendant present. The trial court sustains the motion finding that "[Detective] Scott [ ] is still in Iraq, that he is not expected to return until March 2004, that the State has no way to compel the witness' return from Iraq, and that the State needs the witness to make their case and that the State is otherwise ready to proceed."

11/20/03 The trial is scheduled to begin April 20, 2004.

03/30/04 The State files its third motion for continuance.

04/20/04 A hearing is held on the State's third motion for continuance with Defendant present. The trial court sustains the motion.

06/03/04 Defendant files a motion to dismiss alleging that more than 180 days has expired since the filing of his Request.

06/14/04 Defendant files suggestions in support of his motion to dismiss.

06/30/04 The trial is scheduled to begin October 21, 2004.

10/21/04 The trial is delayed due to the illness of Defendant.

10/27/04 The trial court overrules Defendant's motion to dismiss.

10/27/04 Defendant is tried and convicted.

The 180–day period for bringing Defendant to trial began on December 12, 2002, when his Request was received by both the prosecutor and the trial court. *Meyer v. State*, 854 S.W.2d 69, 71 (Mo.App. E.D. 1993). However, when calculating the expiration of the 180–day period, the day of receipt is excluded, *State v. Galvan*, 795 S.W.2d 113, 118 n. 8 (Mo.App. S.D.1990), as are the periods which are properly tolled pursuant to Section 217.460 and any delays attributable to the affirmative actions of Defendant. *Laramore*, 965 S.W.2d at 850. The delay from the original trial date of May 19, 2003, to October 27, 2004, is almost entirely attributable to continuances granted to the State.

As previously set out, the trial court may grant "additional necessary or reasonable time [to dispose of a detainer] for good cause shown in open court, the offender or his counsel being present[.]" Section 217.460. In this case, the trial court sustained the State's motions for continuance based on the persistent unavailability of the State's witness, Detective Scott. The record reflects that each continuance was granted in open court and in the presence of Defendant. Therefore, as Defendant explains, "the issue for this Court to resolve is whether the State showed good cause to continue the trial sixteen months past the original deadline." [4]

The phrase, "good cause," as it is used in the UMDDL, is neither defined by stat-ute nor Missouri case law. However, Section 217.480 provides that the UMDDL "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." "Therefore, cases which have interpreted ['good cause'] in the other jurisdictions which have adopted the uniform act ... are valuable for interpreting the statute." *Hodge*, 629 S.W.2d at 359. Several jurisdictions have held that it is within the trial court's discretion to determine if good cause exists for extending the UMDDL time limit. *See Nebraska v. Caldwell*, 10 Neb.App. 803, 639 N.W.2d 663, 667 (2002); *Minnesota v. Miller*, 525 N.W.2d 576, 580 (Minn.Ct.App. 1994); *North Dakota v. Kania*, 341 N.W.2d 361, 365 (N.D.1983). At least one jurisdiction has held that "[g]ood cause under [the UMDDL] encompasses a situation where a witness is unavailable." *Caldwell*, 639 N.W.2d at 667. Therefore, we will reverse the trial court's good cause determination based on the unavailability of Detective Scott "only upon a very strong showing of abuse of discretion." *State v. Wolfe*, 13 S.W.3d 248, 261 (Mo. banc 2000).

Where a party seeks a continuance on account of the absence of a witness, the motion must show:

(a) The facts showing the materiality of the evidence sought to be obtained and due diligence upon the part of the applicant to obtain such witness or testimony;

(b) The name and residence of such witness ... and also facts showing reasonable grounds for belief that the attendance or testimony of such witness

---

**4.** We recognize that in his point on appeal, Defendant claims that the trial court erred in overruling his motion to dismiss. However, the decision to extend the 180–day period for good cause was made by the trial court at an earlier date when it ruled on the State's motions for continuance. Therefore, we must review those rulings first.

will be procured within a reasonable time;

(c) What particular facts the affiant believes the witness will prove, and that he knows of no other person whose evidence or attendance he could have procured at the trial, by whom he can prove or so fully prove the same facts;

(d) That such witness is not absent by the connivance, consent, or procurement of the applicant, and such application is not made for vexation or delay, but in good faith for the purpose of obtaining a fair and impartial trial.

Rule 24.10. "All of these factual matters are essential to a proper consideration of the motion and to allow appellate review." *State v. McCarter*, 820 S.W.2d 587, 589 (Mo.App. E.D.1991).

Here, in its first motion for continuance, filed on April 28, 2003, the State alleged that "Detective Scott's supervisor at the Franklin County Sheriff's Department advised [the prosecutor] that Detective Scott and his National Guard Unit had been ordered to active duty for military service on March 14, 2003[,] and that the period of active duty would not exceed 365 day[s]." The State further set out that Detective Scott's unit was expected to be sent to Kuwait or Iraq in the very near future, and Detective Scott was not able to be subpoenaed. The State maintained that Detective Scott's testimony was essential to its case, in that Defendant provided Detective Scott with detailed and specific information concerning Defendant's abuse of Victim. The State explained that it was not aware that Detective Scott had been ordered to active duty until it had made efforts to contact him in preparation for trial. Attached to the State's motion was a copy of the National Guard's order placing Detective Scott on active duty.

■ On May 21, 2003, the trial court sustained the State's motion for continuance, making the following findings:

(1) That [Defendant] filed [Request] on Dec. 12, 2002; (2) Case is set for trial for trial [sic] period May 19 thru May 23, 2003 which is within 180 days of filing of [Request]; (3) State's necessary witness [Detective] Scott was called to active military service on March 14, 2003, two days after case setting was announced.... Witness [Detective] Scott is serving in U.S. Military in Operation Enduring Freedom, Iraq, and is not available for trial; (4) Court finds that the State is ready for trial except for the availability of [Detective] Scott. Witness [Detective] Scott is not available for trial because of circumstances not in the control of the State ... and therefor [sic] the Court finds for good cause that there is a need for additional time for this case to come to trial and the Court orders such additional necessary time pursuant to [Section] 217.460 to bring this charge to trial and the provisions of [Section] 217.460 finding a reasonable additional time will be allowed to obtain the presence of the investigating officer [Detective] Scott at trial of this case after he is returned from military active duty.[5]

The trial court granted the State two additional continuances in open court and in the presence of Defendant, due to the continued unavailability of Detective Scott.[6]

---

5. The trial court's May 21, 2003, order, in the form of a docket entry, indicates that a hearing was held in open court. However, both parties have informed this Court that this hearing was not recorded. Additional facts concerning the continuance may have been conveyed to the trial court off the record. However, we can only review the record before this court.

6. There is no indication in the record that Defendant objected to the subsequent contin-

In arguing that the State failed to show good cause to continue the case beyond the 180–day period, Defendant relies on evidence presented at the motion to dismiss hearing held on October 27, 2004. At that hearing, Detective Scott testified that: (1) he was in training in Missouri from the middle of March until the end of May 2003, when he was deployed to Iraq; (2) he returned home for leave for two weeks in October 2003; and (3) he remained on active military duty until the second week of July 2004. Relying on Detective Scott's testimony, Defendant argues that "the State failed to show good cause why it could not have subpoenaed Detective Scott to a timely trial—or to a deposition to preserve his testimony—before he left the country." In support of his argument, Defendant cites federal regulations allowing state prosecuting attorneys to subpoena active duty military personnel to depositions and other criminal proceedings, and Rule 25.14 which allows a prosecuting attorney to take the deposition of a witness to preserve testimony.

■ The determination to extend the 180–day period for good cause shown was initially made by the trial court on May 21, 2003. The trial court continued the case again on October 20, 2003, and April 20, 2004. There is no indication in the record that the evidence presented at the October 27, 2004, hearing on the motion to dismiss was available to the trial court when it heard the State's motions for continuance. "In reviewing whether the trial court's ruling amounts to an abuse of discretion, we consider only those facts that were before the court when it ruled on the motion[.]" *Chandler v. Multidata Systems Intern. Corp., Inc.,* 163 S.W.3d 537, 546 (Mo.App.

E.D.2005); *see also State v. Jackson,* 141 S.W.3d 391, 395 (Mo.App. S.D.2004)(explaining that "[i]ssues and evidence ... not presented to or decided by the trial court are not preserved for appellate review"); *Robinson v. Empiregas Inc. of Hartville,* 906 S.W.2d 829, 837 n. 7 (Mo. App. S.D.1995)(holding that, "[b]ecause the affidavit was not before the trial court at the time the court made the ruling attacked in Defendant's first point, we cannot consider it").

The trial court has great discretion in granting or denying a motion for continuance. On the record before this Court, and based on the information available to the trial court at the time it heard the motions for continuance, we cannot say that the trial court abused that discretion.

Finally, Defendant argues that even "[i]f this Court believes that the State has shown good cause to extend [Defendant's] trial ... it must still find error in the trial court's extension of the trial to late-October, 2004." Defendant explains that "Detective Scott returned to Missouri during the second week of July, 2004, and the State failed to make any attempt to show why [Defendant's] trial must be further delayed for nearly 3½ more months." The State's third motion for continuance was granted on April 20, 2004. On June 30, 2004, two weeks before Detective Scott returned home, the trial was reset for October 21, 2004. There is no indication in the record that the trial court set the trial for late October 2004 with the knowledge that Detective Scott was returning to Missouri in July 2004. As previously set out, "[i]n reviewing whether the trial court's

---

uances. The only hearing on the State's motions for continuance that was recorded was the October 20, 2003, hearing, where Defendant made no argument in opposition to the State's motion for continuance. "If a defen-

dant acquiesces to a trial date beyond the 180–day period, the court does not lose jurisdiction and the statute is tolled." *State v. Jackson,* 155 S.W.3d 849, 852 (Mo.App. W.D. 2005).

ruling amounts to an abuse of discretion, we consider only those facts that were before the court when it ruled on the motion[.]" *Chandler,* 163 S.W.3d at 546.

Here, the trial court granted the State's third motion for continuance and ordered the case to be reset, based on the continued unavailability of Detective Scott. Section 217.460 authorizes the trial court to grant "additional necessary or reasonable time" to bring the case to trial. We do not find that the additional time granted pursuant to the State's third motion for continuance was unreasonable.

Absent the tolling of the 180–day period, the deadline to bring Defendant to trial was June 11, 2003. However, the 180–day period was tolled from May 19, 2003, to October 21, 2004, for good cause shown in open court. The additional delay in bringing Defendant to trial was attributable to the illness of Defendant. Taking into account the periods which were tolled, Defendant was tried within the statutory period set by the UMDDL, and therefore the trial court did not err in denying Defendant's motion to dismiss. This point is denied.

In his second point, Defendant maintains that the trial court committed plain error in allowing Defendant to waive his right to counsel and proceed pro se without ascertaining on the record whether his waiver was knowingly and intelligently made. We agree that Defendant's right to counsel was not properly waived, and therefore we must reverse Defendant's convictions and remand this case for a new trial.

Defendant concedes that he has not properly preserved this allegation of error for appeal, but he requests that this Court review for plain error. To be entitled to relief under the plain error rule, a defendant must demonstrate that "the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected." *State v. Deckard,* 18 S.W.3d 495, 497 (Mo. App. S.D.2000); *see* Rule 30.20.

"The Sixth and Fourteenth Amendments of [the United States] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975). The Sixth Amendment also guarantees a defendant the right to waive counsel and proceed pro se. *State v. Clay,* 11 S.W.3d 706, 712 (Mo.App. W.D.1999). However, "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d 562. For a defendant to "competently and intelligently [ ] choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

Regarding the waiver of a defendant's right to counsel, Section 600.051 states, in pertinent part:

1. Any judge of a court of competent jurisdiction may permit a waiver of counsel to be filed in any criminal case wherein a defendant may receive a jail sentence or confinement if the court first determines that defendant has made a

knowledgeable and intelligent waiver of the right to assistance of counsel and the waiver is signed before and witnessed by the judge or clerk of the court, providing further that the waiver contains at least the following information which the defendant has read or which has been read to the defendant before the signing thereof:

(1) That the defendant has been charged with the offense of _____ (nature of charge must be inserted before signing);

(2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;

(3) That the maximum possible sentence on the charge is _____ imprisonment in jail and a fine in the amount of _____ dollars or by both imprisonment and fine. That the minimum possible sentence is _____ imprisonment in jail or by a fine in the amount of _____ dollars or by both such confinement and fine;

(4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;

(5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;

(6) That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

The trial court's determination that a defendant has made a knowledgeable and intelligent waiver of the right to counsel "must be based upon inquiry conducted on the record so there is evidence that a defendant understood the ramifications of the waiver." *City of St. Peters v. Hodak,* 125 S.W.3d 892, 895 (Mo.App. E.D.2004). "Absent an inquiry on the record showing Defendant understood the ramification of the waiver of counsel, the imposition of jail time is unconstitutional." *State v. Johnson,* 172 S.W.3d 900, 902 (Mo.App. S.D. 2005).

Here, the trial court related the following in a docket entry dated April 14, 2003: "[Defendant's] motion to proceed [p]ro [s]e is sustained. [Defendant] advised regarding the risks of [p]ro [s]e representation." However, both parties indicate that this hearing was not held on the record. On October 26, 2004, the following exchange took place regarding Defendant's waiver of counsel:

[Prosecutor]: The only other thing I can think of is just for purposes of the record, I don't have a specific recollection, but I assume that Judge Franklin or Judge Dickerson in the past has talked to [Defendant] about the down side of representing himself.

The Court: Let's find out. [Defendant], have they talked to you about that, Judge Franklin or Judge Dickerson, either one, talked to you about the advisability of representing yourself?

[Defendant]: Judge Franklin did a little bit. He said I would be crazy to go against a seasoned prosecuting attorney and not have the guy that was working for me that didn't file anything on my behalf.

The Court: So you're still comfortable with your decision to represent yourself?

[Defendant]: Yes.

The Court: Okay, I'll not interfere with that, you certainly have the right to do so.

The April 14, 2003, docket entry reflects that Defendant was advised regarding the

perils of self-representation. However, this hearing was not held on the record. The inquiry taking place on October 26, 2004, only confirms that Defendant was told he would be crazy to proceed pro se. This inquiry, while on the record, does not sufficiently demonstrate that Defendant understood the ramifications of the waiver of his right counsel. *Johnson,* 172 S.W.3d at 902. The trial court erred in allowing Defendant to proceed pro se without performing the required inquiry on the record. *Id.*

 In addition, we note that there is no indication in the record that a written waiver was executed in this case. To provide objective assurance that a defendant is knowingly, intelligently and voluntarily waiving his right to counsel, Section 600.051 requires that the waiver be in writing. *State v. White,* 44 S.W.3d 838, 842 (Mo.App. W.D.2001). Regarding Section 600.051, the Missouri Supreme Court has stated that "[t]he General Assembly has fixed the signing of a written waiver form as being a necessary part of the procedure to be followed in a criminal case wherein a defendant may receive a jail sentence or confinement, and the courts must abide by it." *Peterson v. State,* 572 S.W.2d 475, 477 (Mo banc.1978). "[S]ince the effective date of [Section] 600.051 (August 13, 1976) the use of the written form prescribed therein has been mandatory and [the] failure to use the written form as mandated is reversible error" *Id.* The Court has subsequently recognized two exceptions to the rule pronounced in *Peterson.*

In *May v. State,* 718 S.W.2d 495, 497 (Mo. banc 1986), the Court concluded that, "*Peterson* should not be applied to mandate the written waiver when the statutory waiver is presented to the defendant in open court and read into the record, and he maintains his purpose of conducting his own defense, while explicitly refusing to sign." The Court stated that "[t]o hold otherwise would permit a form of gamesmanship which might seriously interfere with trial proceedings." *Id.*

In *State v. Hunter,* 840 S.W.2d 850, 860 (Mo. banc 1992), the Court adopted the position already held by the Missouri Court of Appeals, that Section 600.051 is inapplicable where a defendant has hybrid counsel. The Court noted that "one who has 'standby' counsel or 'hybrid' counsel has the aid and assistance of an attorney and has not actually waived counsel." *Id.*

██ A third exception has been recognized where a waiver of counsel is implied by the conduct of a defendant. *See State v. Yardley,* 637 S.W.2d 293, 295 (Mo.App. S.D.1982). This exception arises where a non-indigent defendant says he wants counsel but refuses to employ a lawyer. *Id.* "A fair construction of [Section] 600.051 is that it applies only to express waivers. To construe that section otherwise would create a vehicle by which a procedurally wise defendant could frustrate the administration of justice." *Id.* at 295–96.

Here, there is no indication in the record that a written waiver was executed in accordance with Section 600.051. Furthermore, nothing in the record indicates that: Defendant refused to sign a written waiver; Defendant was represented by "hybrid" counsel; or that Defendant wanted counsel but refused to employ a lawyer. Therefore, under *Peterson,* the trial court's failure to comply with the mandatory requirements of Section 600.051 constitutes reversible error.

A waiver of counsel form, without a record of a hearing is insufficient. *Hodak,* 125 S.W.3d at 895. Here, the trial court did not execute a written waiver of counsel in accordance with Section 600.051, and did not determine on the record whether Defendant's waiver was knowing and intelli-

gent. Therefore, we must reverse and remand this case for a new trial. This point is sustained.

Defendant's third point is not preserved for appellate review and is not dispositive to our disposition of this appeal. However, because the issues raised by this point are likely to arise on remand, we will provide some discussion. Defendant alleges in this point that "[t]he trial court plainly erred in allowing the State to introduce evidence of [Defendant's] other alleged sex crimes against his other step-children[.]"

A criminal defendant has the right to be tried only for the offense for which he is charged. *State v. Pennington,* 24 S.W.3d 185, 189 (Mo.App. W.D.2000). Therefore, evidence of uncharged crimes or prior misconduct is inadmissible if offered for the purpose of showing a defendant's propensity to commit the crime with which he is charged. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993).

However, evidence of uncharged crimes or prior misconduct, "although not admissible to show propensity, is admissible if [it] is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial." *Id.* In addition, the evidence must be legally relevant; that is, its probative value must outweigh its prejudicial effect. *Id.*

Generally, evidence of other uncharged crimes or prior misconduct is logically relevant when it tends to establish: (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) the identity of the person charged. *State v. Beal,* 966 S.W.2d 9, 13 (Mo.App. W.D.1997). "An additional exception is recognized for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged. This

evidence is admissible to present a complete and coherent picture of the events that transpired." *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc 1994)(internal citations omitted).

Evidence of prior misconduct that does not fit any of the articulated exceptions may still be admissible if it is logically and legally relevant. *Bernard,* 849 S.W.2d at 13; *see also State v. Sladek,* 835 S.W.2d 308, 312 (Mo. banc 1992) (explaining that "evidence of the commission of an uncharged crime may prove motive or intent or another material fact, but in any event the evidence must have some legitimate tendency to directly establish the defendant's guilt").

In the present case, Victim's sister, E.H., testified that when she was thirteen and Victim was twelve, Defendant bought them alcohol, and after they became inebriated, he sat between them on the couch and "touched both of [their] genitals." Detective Scott's testimony revealed that there were allegations that Defendant had sexually abused Victim, E.H., and another sibling. Detective Scott also testified that Defendant had made statements corroborating those allegations.

At trial, Defendant did not seek to suppress evidence of prior misconduct, did not object to its admission at trial, and did not allege error in its admission in his motion for new trial. "The court cannot be faulted for not excluding testimony for a reason not made known to it." *State v. Mayes,* 63 S.W.3d 615, 639 (Mo. banc 2001). The matter in this point was not preserved for our review and is denied.

Nevertheless, on remand, we call attention to *Bernard,* 849 S.W.2d at 13, in which the Missouri Supreme Court explained that "[i]t is in the application of the common scheme or plan exception that courts most often have admitted evidence of the

defendant's prior sexual abuse of minors other than the victim." In assessing the logical relevance of such evidence under that exception the Court set out the following:

> Because of the secretive nature of the crime in most cases involving sexual abuse or molestation of a child by an adult, the only eyewitnesses to the crime are the defendant and the victim. The trial often becomes a credibility contest between the defendant and the victim. Evidence of prior crimes in such situations, is, therefore, probative.

*Id.* at 17 (internal citations omitted). However, the Court warned that:

> [f]or corroboration evidence to be of sufficiently increased probative value so as to outweigh its prejudicial effect, the evidence must be more than merely similar in nature to the sexual assault for which the defendant is charged. Evidence of prior sexual misconduct that corroborates the testimony of the victim should be nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's *modus operandi.* This is a threshold requirement that must be met before the trial court can proceed to weigh any additional factors in determining the question of admissibility.

*Id.*

The judgment is reversed and remanded for further proceedings consistent with this opinion.

BATES, C.J., and BARNEY, J., concur.