STATE of Missouri, Plaintiff–
Respondent,

v.

James D. MERRICK, Defendant–
Appellant.

No. 27671.

Missouri Court of Appeals,
Southern District,
Division Two.

April 11, 2007.

Irene Karns, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Joshua N. Corman, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

James D. Merrick ("Defendant") appeals the jury convictions of first degree robbery, a violation of Section 569.020,[1] and armed criminal action, a violation of Section 571.015. He contends that the trial court was without jurisdiction because the State failed to bring this case to trial within 180 days after he invoked the Uniform Mandatory Disposition of Detainers Law ("UMDDL"), Section 217.450 *et seq.*, and in permitting a witness for the State to give testimony concerning an uncharged crime.

Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. On March 2, 2005, Jonathan Hardin ("Hardin") was working at the Rolla British Petroleum Amoco gas station (the "BP") in Phelps County, Missouri, when Defendant came in and picked out a half dozen donuts and poured a cup of coffee. After the only other customer in the store left, Defendant approached the counter and asked for two cartons of cigarettes. Hardin turned around to get the cigarettes and when he turned back around, Defendant had a gun sitting on the counter in his right hand, pointed at Hardin.

Defendant told Hardin to put the cigarette cartons in a bag. When he bent down to get the bags under the counter, Hardin hit the safety button. Defendant demanded that Hardin "[g]et the money out of the drawer," or he would shoot him. Hardin informed Defendant that the cash drawer was locked, but Defendant reached around and unsuccessfully attempted to open the cash drawer himself. After failing to open the cash drawer, Defendant demanded more cigarettes which Hardin handed to him. Before leaving the BP Defendant asked if there was tape in the store security cameras. Hardin lied and told Defendant the cameras were "fake." As Defendant was backing out of the store, he pointed the gun at Hardin and told him

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

not to press any buttons or he would shoot him.

Officer Frank Hawkins ("Officer Hawkins") with the Rolla Police Department responded to the robbery call. Hardin described Defendant to Officer Hawkins as a white male, forty to forty-five years old, approximately five-six, and 120 pounds, with long dark hair pulled back in a pony tail, a teardrop tattoo over his right eye, and a goatee, wearing black clothes, and a backwards baseball cap.

Ann Chepley ("Chepley") lived with Defendant in March 2005. On the evening of March 1, 2005, Defendant asked Chepley if she would draw a thunderbolt tattoo on his neck and a teardrop tattoo on his eye because he wanted to get them permanently tattooed. She tried to draw the tattoos, but couldn't get them right so Defendant had a friend do it instead. Sometime between 11:00 p.m. and midnight Defendant left their home wearing black boots, black jeans, a black t-shirt, a black and white coat, and a baseball cap. Defendant had a goatee and his long hair was in a ponytail.

Defendant was gone all night, which was unusual for him, but he called Chepley a couple times, one time telling her that he was in Rolla, Missouri, and he would be home soon. Sometime between 8:00 a.m. and 9:00 a.m. Defendant arrived home with a brown paper bag of money, a two-liter bottle of soda, a bottle of Jim Beam, some cartons of cigarettes, a pack of cigarettes, and some lottery tickets. Defendant also had a gun with him. Chepley asked Defendant were the stuff came from and he told her that "it was his lucky day." Later that day, Defendant admitted to Chepley and a friend that he had robbed the BP as well as Delano's in Cuba, Missouri, the night before.

On March 15, 2005, a couple of weeks after the robbery, Chepley was incarcerated in the Crawford County Jail on a proba-tion violation. While there she talked with Detective Tim Cunningham, a deputy with the Crawford County Sheriff's Office, and gave him a written statement detailing what she knew about the robbery at the BP and a robbery that took place the same night in Cuba, Missouri.

That same day, Officer Scott Mathena ("Officer Mathena"), a police officer with the Bourbon Missouri Department of Public Safety, responding to a stop and hold bulletin from the dispatcher, stopped Defendant and searched him and his car. Officer Mathena found a loaded pistol under the passenger seat and Defendant was arrested.

Defendant was charged in a third amended information, as a prior and persistent offender, with the class A felony of robbery in the first degree, a violation of Section 569.020, and armed criminal action, a violation of Section 571.015. He was tried before a jury and found guilty on both counts. Defendant was sentenced, as a prior and persistent offender, to thirty years for robbery and five years for armed criminal action to the department of corrections with the sentences to be served concurrently. Defendant now appeals.

■■■■ In his first point on appeal, Defendant alleges that the trial court erred in denying his motion to dismiss because the trial court was without jurisdiction in that the State failed to bring Defendant to trial within 180 days after he invoked the UMDDL. We disagree.

The right to be brought to trial within 180 days after a proper request under the [UMDDL] is jurisdictional. [T]he provisions of the UMDDL are not drenched in doubt or ambiguity, and a loss of subject matter jurisdiction inexorably occurs by operation of law when an imprisoned person who has initiated a proper request is not brought to trial

within the appropriately determined statutory time period. Jurisdictional issues present questions of law, which we review *de novo* and without deference to the [trial] court's determination.

*State v. Nichols,* 207 S.W.3d 215, 219 (Mo. App. S.D.2006) (internal quotations and citations omitted).

■ Section 217.450.1 of the UMDDL states:

Any person confined in a department correctional facility may request a final disposition of any untried indictment, information or complaint pending in this state on the basis of which a detainer has been lodged against him while so imprisoned. The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

"A defendant who complies with Section 217.450.1 must be brought to trial, '[w]ithin one hundred eighty days after the receipt of the request and certificate ... by the court and the prosecuting attorney,' or the untried indictment, information or complaint must be dismissed." *Nichols,* 207 S.W.3d at 219–20 (quoting Section 217.460). "In order to receive the benefit and protection of the UMDDL, a defendant must show a good faith effort to invoke the UMDDL and must substantially comply with its procedural requirements." *State v. Williams,* 120 S.W.3d 294, 299 (Mo.App. W.D.2003).

On April 6, 2005, a felony complaint was filed in Phelps County against Defendant. On May 10, 2005, apparently while Defen-

dant was in DOC custody on an unrelated parole violation, he filed a pro se "Motion to Request a 180 Day Writ of Habeas Corpus AD Proseqendum." Assuming arguendo that Defendant could invoke the UMDDL and this motion was a "request" for a "final disposition" under Section 217.450.1, he failed to substantially comply with the procedural requirements of the UMDDL because he never sent the request to the prosecuting attorney.

Section 217.450.1 specifically states that the "request shall be ... addressed to the court ... and to the prosecuting attorney." This request is to be delivered to the Director of the Division of Adult Institutions (the "Director"), who then must make specific certifications and send copies of the request and certification by registered mail to the court and the prosecuting attorney to whom the prisoner addressed the request. Section 217.455; *Williams,* 120 S.W.3d at 298.[2] The 180–day time period begins only after the request is received by the court and the prosecuting attorney. Section 217.460.

■ "The burden of proving if and when the prosecuting attorney received the defendant's request for disposition is on the defendant." *Williams,* 120 S.W.3d at 298. A fundamental procedural requirement of the UMDDL is a written request for disposition addressed to the court and the prosecuting attorney. *Id.* at 299. Here, however, Defendant has not shown that he substantially complied with the UMDDL because he offered no proof that he addressed his request to the prosecuting attorney or that the prosecuting attorney received the written request.

---

2. In this case there is no record that Defendant gave the written request to the Director but "[i]t has been held that failure to deliver the request to the prison officials for processing does not defeat substantial compliance with the UMDDL where the prosecutor had actual notice of the request and did not act on it." *State ex rel. Clark v. Long,* 870 S.W.2d 932, 940 (Mo.App. S.D.1994).

Defendant admits that he did not properly serve the prosecuting attorney with the request, but argues that the State became aware of the request on June 21, 2005, and claims the 180–day time period should have started on that date.[3] Therefore, according to Defendant, he needed to be brought to trial by December 18, 2005, and because his trial did not start until February 1, 2006, the trial court was without jurisdiction.

■ We need not decide whether the 180–day time period began when the State became aware of Defendant's request for disposition because the record is devoid of any evidence showing that the State did in fact become aware of the request on June 21, 2005. The only mention of this fact is the statement contained in Defendant's new trial motion which claims, "the State of Missouri became aware of the request on June 21, 2005." "Bare allegations in a new trial motion do not prove themselves. . . ." *State v. O'Dell,* 684 S.W.2d 453, 468 (Mo.App. S.D.1984) (quoting *State v. McMillin,* 581 S.W.2d 612, 616 (Mo.App. S.D.1979)). In order to present facts outside the record in a motion for new trial a defendant needs to file an affidavit with the new trial motion. Rule 29.11(f)[4]; *State v. Masterson,* 733 S.W.2d 40, 45 (Mo. App. S.D.1987).

Based upon the record on appeal, the earliest that the prosecution can be deemed to be actually aware of Defendant's request for disposition is on January 12, 2006, when Defendant filed his motion to dismiss for lack of jurisdiction claiming that 180 days had passed after the filing of his request. Assuming, without deciding, that the 180–day time period started on this date, the trial began February 1, 2006, only nineteen days thereafter. Therefore, based upon the record before us, the trial court had jurisdiction in this case. Defendant's first point is denied.

■ Defendant's second point on appeal claims the trial court erred in allowing Chepley to testify about his admission to a robbery in Cuba, Missouri, in addition to the one in Rolla, Missouri, which he was on trial for, because such testimony was inadmissible evidence of an uncharged crime. The testimony Defendant claims was improperly admitted occurred during the direct examination of Chepley when the prosecutor questioned her about what happened after Defendant came home. It reads:

Q: Now, on March 2nd did anyone else come over to the residence?

A: Yes. Two people.

Q: And did you all talk that day?

A: Yeah. A friend of his and a friend of mine.

Q: And was there anything said about hearing about a robbery at Rolla and Delano's in Cuba?

A: My friend had mentioned hearing it over the scanner that someone had robbed Delano's and a place in Rolla.

Q: . . . Was that statement made in front of [Defendant]?

A: Yes, it was.

Q: What was his reaction?

A: He grinned.

Q: Did your friend leave at some point that day?

A: Not too long after that.

---

**3.** The day the UMDDL request is received is excluded and the last day of the period is included in the calculation of the 180–day period. *State ex rel. Garrett v. Dally,* 188 S.W.3d 111, 116 n. 5 (Mo.App. S.D.2006).

**4.** All references to rules are to Missouri Rules of Criminal Procedure (2006) unless otherwise indicated.

Q: After she left did [Defendant] say anything to you about that—those robberies?

A: Yeah. He admitted to them.

Q: And after he admitted to them—Well, what did he say?

A: He had just admitted knowing—Admitted to me that he had done them. There wasn't really any basic conversation, except for between him and his friend Rich.

Q: Did you overhear that conversation?

A: Yes.

Q: What was said then?

[Hearsay objection by counsel omitted.]

A: He admitted to his friend that he had robbed Delano's and I still don't—I believe the other place was BP's in Rolla.

■ At no time while this was occurring did Defendant object on the ground that this was inadmissible evidence of an uncharged crime. Failure to object to allegedly impermissible testimony does not preserve the claim for appellate review. *State v. Harris,* 156 S.W.3d 817, 824 (Mo.App. W.D.2005). Defendant does not disagree with this, but asks us to review his claim for plain error under Rule 30.20.

■ We use plain error review sparingly and limit it only to those cases where there is a clear demonstration of manifest injustice or miscarriage of justice. *State v. Coker,* 210 S.W.3d 374, 385 (Mo.App. S.D. 2006). We review claims for plain error under a two-prong test. *Id.* "In the first prong, we determine whether there is, indeed, plain error, which is error that is evident, obvious, and clear. If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* (internal citations and quotations omitted).

Defendant bears the burden of showing a plain error has occurred. *Id.*

■ As a general rule, evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Morrow,* 968 S.W.2d 100, 107 (Mo. banc 1998). "Exceptions to the general rule provide for the admission of evidence that tends to establish motive, intent, the absence of mistake or accident, or a common plan or scheme." *Id.* Another exception recognized allows evidence of uncharged crimes that are part of the circumstance or the sequence of events surrounding the offense charged to be admitted. *Id.* at 107. This exception is sometimes referred to as the "parallel exception." *State v. McGehee,* 156 S.W.3d 484, 486 (Mo.App. S.D.2005). The parallel exception permits evidence of separate crimes in order "to present a complete and coherent picture of the events that transpired." *Morrow,* 968 S.W.2d at 107.

We find that Chepley's testimony revealing Defendant's admission of the uncharged robbery in Cuba, Missouri, was admissible under the parallel exception. The robbery in Cuba and the robbery in Rolla happened on the same night and Chepley testified that Defendant was gone the entire night.

Chepley's testimony also revealed that when Defendant arrived home he had a paper bag of money, a two-liter bottle of soda, a bottle of Jim Beam, some cartons of cigarettes, a pack of cigarettes, and some lottery tickets. During the robbery at the BP, Defendant could not get the cash drawer open and the only items he took from the BP were cigarettes. Without the testimony revealing that Defendant also committed a robbery in Cuba, Missouri, the jury would have been left wondering where Defendant was the whole

night and where the other items he arrived home with, specifically the bag of money, came from. Therefore, Chepley's testimony showing that Defendant admitted to the robbery in Cuba, Missouri, was necessary to present a complete and coherent picture of the events that transpired.

We do not find the trial court evidently, obviously, and clearly erred in allowing Chepley to testify that Defendant admitted to the uncharged crime of robbery in Cuba, Missouri. Therefore, Defendant has failed to prove a plain error occurred during trial. Defendant's second point is denied.

The judgment of the trial court is affirmed.

BATES, C.J., and BARNEY, J., concur.