

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD85256 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| TYESHA LYNETTE PECK, | ) | June 27, 2023 |
| | ) | |
| Appellant. | ) | |
| | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri
Honorable Robert Lawrence Koffman, Judge**

**Before Division Three: Janet Sutton, Presiding Judge,
Cynthia L. Martin, Judge and Edward R. Ardini, Jr., Judge**

Tyesha Peck (Peck) appeals from the Pettis County Circuit Court (trial court) judgment entered after a jury trial. Peck, representing herself, was convicted of the class B felony assault in the second degree involving a special victim under section 565.052[1] for which she was sentenced to five years' imprisonment. Peck contends that the trial court erred in finding that she knowingly, voluntarily, and intelligently waived her right to counsel. For the reasons explained herein, we reverse and remand for a new trial consistent with this opinion.

---

[1] Statutory references are to the Revised Statutes of Missouri 2016 and all rule references are to the Missouri Supreme Court Rules.

## Factual and Procedural Background

Peck was indicted in September 2021 for the class B felony assault in the second degree involving a special victim under section 565.052. Peck was charged with assaulting an emergency room nurse while Peck was there for mental health treatment.

From the time of Peck's indictment through her sentencing in March 2022, no attorney entered an appearance on her behalf. Peck appeared for arraignment in October 2021, at which time the trial court set the case for jury trial on December 1, 2021. On December 1, however, the trial court continued the case to December 20, 2021, for a new trial setting. Then, on December 20, the trial court again continued the case and set the jury trial for January 13, 2022. Until the day of trial, at no time does the record indicate that the trial court advised Peck of her right to appointed counsel if she could not afford one.

On the day of her trial, Peck appeared *pro se*. The trial court and Peck then had the following colloquy:

> THE COURT: Madam, before I ask you that question, I need to make a record for the Court of Appeals. If I'm recalling correctly, at your arraignment, you were told of your rights, the maximum range of punishment, and the allegations against you; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: At that time, I asked you if you were going to hire an attorney; is that also correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you told me you were not; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Subsequent to that, we had a trial set where we had to continue it for whatever reason, and you were in court at the trial setting and I asked you again if you were going to hire an attorney; is that also correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is it—I know that I explained to you the pitfalls of not having an attorney, but it's important to me to put it on the record that I told you

2

and what I told you. Do you understand that if you try this case here today without an attorney, you're at risk for losing?

THE DEFENDANT: Yeah.

THE COURT: You don't know anything about the rules of evidence or the rules of criminal procedure, do you?

THE DEFENDANT: No.

THE COURT: Do you understand that this prosecutor does?

THE DEFENDANT: Yes.

THE COURT: He will use that evidence and those rules.

THE DEFENDANT: Yes.

THE COURT: Do you understand you're obligated to follow the same rules that he follows?

THE DEFENDANT: Yes.

THE COURT: And it's my duty to enforce those rules?

THE DEFENDANT: Yes.

THE COURT: Okay. Nobody can compel you to have an attorney, but you're entitled to get one. If you cannot afford one, one will be made available to you. But you have chosen to not get one; is that correct?

THE DEFENDANT: Correct.

THE COURT: Are you doing that voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anyone caused or forced you to not get an attorney?

THE DEFENDANT: No.

THE COURT: And you completely understand that there's a danger in that?

THE DEFENDANT: Yeah.

THE COURT: Okay. You also have a right to remain silent and say nothing, but if you speak, that will be used against you. The State will use it against you in front of that jury; do you understand?

THE DEFENDANT: Yes.

THE COURT: You can't be compelled to get up on the witness stand and testify against yourself or for any other reason in this case; do you understand that?

THE DEFENDANT: Yes.

THE COURT: On the other hand, you have a constitutional right to testify. If you choose to testify, that's all right. We can't stop you from doing that, but there's real danger in that. Do you have any other criminal convictions?

THE DEFENDANT: Yes.

THE COURT: They will use those for truth or veracity if you take the witness stand; do you understand?

THE DEFENDANT: Yes.

THE COURT: That jury then will consider that, and that's a character record and that stands with you; do you understand?

THE DEFENDANT: Yes.

THE COURT: Do you still want to try this yourself?

THE DEFENDANT: Yes.

THE COURT: Okay. Now, jury trials are not like TV trials. There are rules. I am required to enforce those rules. You can't just speak when you want to speak; you have to do it within the rules. Objections have to be made based on legal objections, not factual feeling objections; do you understand?

THE DEFENDANT: Yes.

The trial court then somewhat explained the jury selection process to Peck, and Peck confirmed that the trial court would sentence her if convicted. Then, the trial court continued questioning:

THE COURT: The [c]ourt finds the Defendant has, of her own will—well, I need to ask a few more questions on that. No one has compelled you to come here without an attorney today; is that correct?

THE DEFENDANT: Correct.

THE COURT: Are you under the influence of any alcohol or drugs at this time that would prevent you from understanding what you're doing?

THE DEFENDANT: No.

THE COURT: Do you claim to have a mental disease or defect which would prevent you from understanding what you're doing?

THE DEFENDANT: I mean, I've been diagnosed with mental health, but I—I'll just say no.

THE COURT: Okay. Let the record reflect the [c]ourt finds the Defendant has willfully and of her own volition, without force or threat, waived her right to counsel.

4

The record does not show that the trial court obtained a written waiver of counsel form from Peck during this time.

At trial, Peck did not make an opening statement, did not cross-examine any of the State's witnesses, made no objections during trial, did not move for judgment of acquittal, and made no closing argument. Peck testified in her own defense but called no other witnesses. On the stand, Peck's sole testimony was to apologize to the victim. When cross-examined by the State, Peck admitted she bit, kicked, and hit the victim, admitted she was entirely reckless, and agreed her actions recklessly caused the victim significant injury. The jury found Peck guilty after deliberating for eleven minutes, and the trial court sentenced her to five years' imprisonment. Peck did not file a motion for new trial.

**Standard of Review**

Peck argues on appeal that, in allowing her to represent herself, the trial court violated both her constitutional and statutory rights. Peck did not raise either claim at trial or file a motion for a new trial. Thus, Peck did not preserve her claims for appellate review.

A constitutional claim must be made at the first opportunity to be preserved for our review. *State v. Masters*, 651 S.W.3d 863, 867 (Mo. App. W.D. 2022) (quoting *State v. Davis*, 507 S.W.3d 41, 44 (Mo. App. E.D. 2016)). Nevertheless, "a self-represented defendant's failure to object at trial regarding the knowing, voluntary, and intelligent nature of [her] waiver of the right to counsel is generally excused." *Id.* (quoting *State v. Kunonga,* 490 S.W.3d 746, 759 (Mo. App. W.D. 2016)). We generally excuse self-represented defendants from this preservation requirement because they "cannot be expected to object that a waiver-of-counsel was not voluntary because of alleged inadequacies in an on-the-record inquiry designed to determine whether [the] waiver is knowing, voluntary, and intelligent." *Id.* (citation omitted). Thus, we

5

review Peck's constitutional claim that the trial court conducted an inadequate *Faretta* hearing[2]

*de novo.* *Id.* ("[W]e review a claim that the waiver of counsel hearing was inadequate *de novo.*").

We do not review *de novo*, however, a self-representing litigant's unpreserved claim that the trial court violated section 600.051[3] by not obtaining a written waiver of counsel form. *Id.* at 868; *Kunonga*, 490 S.W.3d at 759. Rather, we review an unpreserved claim that the trial court failed to comply with section 600.051 under plain error. *Masters*, 651 S.W.3d at 868; *Kunonga*, 490 S.W.3d at 759–60.

To be entitled to plain error relief, the alleged error (1) must be "evident, obvious, and clear" and (2) "must have resulted 'in manifest injustice or a miscarriage of justice.'" *Masters*, 651 S.W.3d at 868 (citing *Kunonga*, 490 S.W.3d at 760); Rule 30.20.[4] As this Court stated in *Masters*:

> A violation of Section 600.051 constitutes evident, obvious, and clear error because Section 600.051 "protects a fundamental constitutional right, and compliance with [the statute] is essential to the State's ability to sustain its burden to establish a waiver of counsel." Additionally, a violation of Section 600.051 constitutes a manifest injustice or miscarriage of justice "because a violation of

---

[2]  We use the term "*Faretta* hearing" to refer to the required pre-trial hearing conducted by the trial court to determine whether "a defendant who wishes to waive his [or her] right to counsel understands the perils of self-representation." *State v. Kunonga*, 490 S.W.3d 746, 759 n.5 (Mo. App. W.D. 2016). *See Faretta v. California*, 422 U.S. 806 (1975).

[3]  Section 600.051 sets forth the procedures for securing a criminal defendant's written waiver of counsel.

[4]  Rule 30.20 states:

> Allegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

6

the right to counsel is structural error that is presumed to infect the entirety of a trial."

*Id.* at 868 (citations omitted).

"Plain error review remains subject, however, to the State's burden to prove that an unrepresented defendant waived the right to counsel." *Kunonga*, 490 S.W.3d at 760. Because the State bears this burden, "the State must prove compliance with section 600.051 and that a defendant was afforded a *Faretta* hearing." *Id.* at 765. "Only then will the burden shift to the unrepresented defendant to establish that the waiver of counsel was not knowing, voluntary, or intelligent." *Id.* "[T]he State can overcome the existence of a manifest injustice or miscarriage of justice by objectively demonstrating that the violation of section 600.051 had no impact on a defendant's knowing, voluntary, and intelligent waiver of counsel." *Id.* at 761. The State concedes that Peck is entitled to both plain error review and relief on her unpreserved statutory claim.

### Legal Analysis

Peck raises two points on appeal. First, Peck argues that the trial court erred in finding that she knowingly, voluntarily, and intelligently waived her right to counsel because the trial court "conducted an inadequate *Faretta* hearing by failing to inform Peck of potential defenses she might offer, the minimum possible sentence on the charge, and the nature of the charge." Second, Peck argues that the trial court erred in finding that she knowingly, voluntarily, and intelligently waived her right to counsel because she "was never presented with and never signed a written waiver of counsel as mandated by section 600.051." We find the trial court both failed to conduct an adequate *Faretta* hearing and failed to provide and have Peck execute a waiver of counsel form. We reverse and remand for a new trial.

Missouri has two requirements that must be satisfied before a trial court can conclude that a defendant effectively waived his or her right to counsel. *State v. Floyd*, 635 S.W.3d 593, 597 (Mo. App. W.D. 2021). First, the trial court must conduct "a thorough [*Faretta*] evidentiary hearing that establishes that the defendant understands exactly what rights and privileges he [or she] is waiving, as well as the dangers associated with waiving constitutional rights." *Id.* (quoting *Kunonga*, 490 S.W.3d at 764). "Second, the defendant must be given the opportunity to sign the written waiver of counsel form mandated by Section 600.051." *Id.* (quoting *Kunonga*, 490 S.W.3d at 764). "There is a strong presumption against the waiver of counsel." *Kunonga*, 490 S.W.3d at 762.

## I. The Inadequate *Faretta* Hearing

"The Sixth Amendment right to counsel 'implicitly embodies a correlative right to dispense with a lawyer's help.'" *Masters*, 651 S.W.3d at 868 (citation omitted); *Faretta v. California*, 422 U.S. 806, 814 (1975). This right to dispense with counsel "applies to the states through the Due Process Clause of the Fourteenth Amendment." *Masters*, 651 S.W.3d at 868; *Faretta*, 422 U.S. at 818. "[F]or a waiver of counsel to be effective, due process requires that the waiver be made knowingly and intelligently." *Masters*, 651 S.W.3d at 868 (citation omitted).

"Although no specific litany is required for a *Faretta* hearing, '[a] trial court can only make certain that a defendant has knowingly, voluntarily, and intelligently waived the right to counsel from a penetrating and comprehensive examination of all the circumstances.'" *Floyd*, 635 S.W.3d at 598 (quoting *Kunonga*, 490 S.W.3d at 764). A defendant's waiver is not knowing and intelligent unless the trial court timely informs her of "the nature of the charges against [her], potential sentences if convicted of the offenses, potential defenses [she] can offer, the nature of the trial proceedings, [and] the fact that, if the defendant refuses counsel, [she] will be required

8

to proceed *pro se* and the dangers of proceeding *pro se*." *Id.* at 598–99 (quoting *State v. Black*, 223 S.W.3d 149, 154 (Mo. banc 2007)). *See infra* § 600.051.1 (including these *Faretta* hearing requirements as part of the "minimum" required content of a written waiver of counsel form, as noted by *Kunonga*, 490 S.W.3d at 764).

"Whether a defendant's waiver is made knowingly and intelligently depends on the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Floyd*, 635 S.W.3d at 598 (quoting *Black*, 223 S.W.3d at 154). The trial court "must advise the defendant of the perils of self-representation on the record '*before* the trial date, to allow defendant time to choose whether to waive the right to an attorney.'" *City of St. Peters v. Hodak*, 125 S.W.3d 892, 894 (Mo. App. E.D. 2004) (emphasis added) (citation omitted). A criminal defendant should not be deemed to have waived their right to counsel "until the entire process of offering counsel has been completed[,]" including "a *thorough inquiry* into the accused's comprehension of the offer and capacity to make the choice intelligently and understandably . . . ." *Id.* (emphasis added) (citation omitted). We will not presume waiver "from the echoes of a silent record." *State v. Sullivan*, 640 S.W.3d 149, 156 (Mo. App. E.D. 2022) (citation omitted).

Peck did not knowingly and intelligently waive her right to counsel. During Peck's *Faretta* hearing, the trial court advised her somewhat of the dangers of proceeding *pro se* and of the nature of the following *voir dire* and trial proceedings. But, the record reveals that the trial court overall failed to adequately advise Peck. First, while the trial court informed Peck of the charge at her arraignment, the trial court failed to inform Peck of the nature of the charge she was facing during the *Faretta* hearing.

9

Second, the trial court did not inform Peck of the potential sentence she faced if convicted. During a *Faretta* hearing, the trial court must inform the defendant of potential sentences that could be imposed. *Masters*, 651 S.W.3d at 868; *See* § 600.051.1(3). While the trial court indicated that it told Peck about "the maximum range of punishment" at her arraignment, the trial court did not confirm this during the *Faretta* hearing itself nor did the trial court inform Peck about the minimum punishment she faced.

Third, the trial court did not inform Peck of any potential defenses available to her. Neither did the trial court inquire whether Peck knew of any defenses herself. Peck presented no defense, as evidenced by her lack of an opening statement, cross-examinations, objections, motion for judgment of acquittal, and closing argument. When testifying on her own behalf, Peck apologized for harming the victim. When cross-examined by the State, Peck admitted to recklessly causing significant harm to the victim.

Without informing Peck of these three essential requirements, the trial court violated Peck's constitutional rights because the trial court failed to ensure that Peck knowingly, voluntarily, and intelligently waived her right to counsel.

Point I is granted.

## II. No Record of a Signed Written Waiver of Counsel

In its brief, the State concedes, "The case must be remanded for a new trial due to the trial court's failure to obtain a valid waiver of counsel from [Peck]." We agree and appreciate the State's candor.

10

Section 600.051 mandates execution of a written right to counsel waiver and "the failure to use the written form as mandated is reversible error."[5] *State v. Nichols*, 207 S.W.3d 215, 226 (Mo. App. S.D. 2006) (finding reversible error when there was "no indication in the record that a written waiver was executed in accordance with Section 600.051.") Though section 600.051 "allows a defendant to execute a written waiver of counsel," the trial court's "duty to the defendant is not extinguished merely by the signing of the form." *Hodak*, 125 S.W.3d at 894. In relevant part, section 600.051.1 states:

> Any judge of a court of competent jurisdiction may permit a waiver of counsel to be filed in any criminal case wherein a defendant may receive a jail sentence or confinement *if the court first determines that defendant has made a knowledgeable and intelligent waiver of the right to assistance of counsel* and the waiver is signed before and witnessed by the judge or clerk of the court . . . .

(Emphasis added). "Waiver is permitted where the 'court first determines that defendant has made a knowledgeable and intelligent waiver of the right to assistance of counsel.'" *Hodak*, 125 S.W.3d at 895 (quoting § 600.051).

Peck and the State agree that "there is nothing in the record to suggest that [Peck] was provided with, and given the opportunity to sign, the written waiver form mandated by section 600.051 . . . ." There is no record that the trial court ever presented Peck with a written waiver of counsel nor did it ask her to sign a waiver form. Thus, the trial court plainly erred by not obtaining Peck's signed waiver of counsel form under section 600.051, resulting in manifest injustice.

---

[5] *Nichols* contains two exceptions to this general rule, although neither is applicable here. *See State v. Nichols*, 207 S.W.3d 215, 226 (Mo. App. S.D. 2006).

11

As the trial court did not conduct an adequate *Faretta* hearing, and there is no record that Peck executed a waiver of counsel form required under section 600.051, the trial court failed to ensure that Peck's waiver of counsel was knowing, voluntary, and intelligent.

Point II is granted.

## Conclusion

Peck's conviction and sentence are reversed, and the case is remanded for a new trial consistent with this opinion.

_____
Janet Sutton, Presiding Judge

Cynthia L. Martin and Edward R. Ardini, Jr., Judges concur.